**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KEVIN R. F., | |
| Petitioner, | Civil Action No. 20-5647 (JMV) |
| v. | **OPINION** |
| JOHN TSOUKARIS, et al., | |
| Respondents. | |

**VAZQUEZ, District Judge:**

This matter originated with Petitioner Kevin R. F.'s[1] Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. D.E. 1. Petitioner then filed a Motion for a Temporary Restraining Order ("TRO"). D.E. 14. For the reasons detailed below, the TRO is denied without prejudice.

**I.   Background**

Petitioner is an immigration detainee being held by United States Immigration and Customs Enforcement ("ICE") at the Essex County Correctional Facility ("ECCF") in Newark, New Jersey. D.E. 1 at ¶ 1. The instant action was filed in the wake of the ongoing COVID-19 pandemic,[2] that has been reported to have been contracted by both personnel and detainees at

---

[1] Petitioner is identified herein only by his first name and the first initials of his middle and surnames in order to address certain privacy concerns associated with § 2241 immigration cases. This manner of identification comports with recommendations made by the Judicial Conference of the United States' Committee on Court Administration and Case Management.

[2] COVID-19 is an abbreviation of the coronavirus disease 2019, a respiratory illness that can spread from person to person, that was declared a pandemic by the World Health Organization ("W.H.O.") on March 11, 2020.  *See* Centers for Disease Control and Prevention *Coronavirus*

ECCF. Petitioner submits that due to "serious health issues," including coronary artery disease and obesity, he is in a vulnerable population that puts him at greater risk should he contract the virus. *Id.* Respondents do not dispute Petitioner's medical and physical conditions.

Petitioner is aged forty and from Jamaica; he has lived in the United States for the past thirty years.[3] *Id.* at ¶ 10. Petitioner indicates that he has approximately thirty relatives in the United States. *Id.* at ¶ 49. Before his current detention, Petitioner had lived in Newark with his wife of five years. *Id.* at ¶ 50. On March 17, 2020, Petitioner was charged with simple assault, but the charge was dismissed on May 4, 2020. *Id.* at ¶ 51. As a result of the charge, Petitioner was placed in civil immigration detention. *Id.* Petitioner's criminal history consists of a 2002 conviction for harassment and simple assault. *Id.*

ICE detained Petitioner on March 20, 2020. D.E. 15-8. ICE alleged that Petitioner had entered the United States on approximately April 1, 2000, "as a B-2 nonimmigrant visitor" but then stayed beyond September 30, 2000, without authorization. *Id.*

While at ECCF, medical staff performed a "rapid antibody test," by way of a finger stick, on Petitioner. D.E. 15-6 at ¶¶ 10-13; D.E. 15-10. Petitioner tested positive for IgG antibodies, which means that he "may have developed immunity to COVID-19 after exposure," and is "presume recovered[.]" D.E. 15-6 at ¶ 16, D.E. 15-10. Petitioner contests the reliability of the rapid antibody test. D.E. 19-1 at ¶ 18. ICE also does not take a position as to the accuracy or

---

*Disease 2019 Frequently Asked Questions*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#covid19-basics (last visited Apr. 7, 2020); *see also* William Wan, *WHO declares a pandemic of coronavirus disease covid-19*, Washington Post, https://www.washingtonpost.com/health/2020/03/11/who-declares-pandemic-coronavirus-disease-covid-19/ (last visited Apr. 7, 2020).

3 ICE's records indicate that Petitioner has been in the United States for twenty years. This difference, thirty versus twenty years, is immaterial to the Court's decision.

validity of the rapid antibody test.  D.E. 15 at 8.

The parties agree that Petitioner is detained pursuant to 8 U.S.C. § 1226(a), having been charged with removability under Section 8 U.S.C. § 1227(a)(1)(B).  Respondents assert that Petitioner has had three chances to request release on bond from an Immigration Judge but has not done so.  D.E. 15 at 12.  Specifically, Respondents indicate that on April 21, 2020, Petitioner withdrew his request for bond in order to retain an attorney; on May 4, 2020, Petitioner withdrew his request for bond because his attorney did not appear; and on May 11, 2020, Petitioner and his counsel attended a telephonic master hearing but did not request a bond hearing or a bond.  *Id.*  According to Respondents, the immigration matter was adjourned until May 19, 2020.  *Id.*  Petitioner responds that he did initially request that ICE release him, but ICE declined.  D.E. 21 at 2.  While acknowledging that he could seek a bond redetermination from an Immigration Judge ("IJ"), Petitioner notes that he will not be able to assert his constitutional claim.  *Id.*  Petitioner adds that his immigration counsel has been gathering information demonstrating that Petitioner's underlying criminal charge has been dismissed.  *Id.*

On May 7, 2020, Petitioner filed the instant habeas petition.  D.E. 1.

## II.     Legal Standard and Analysis

Petitioner submits that the conditions of his confinement violate his Fifth Amendment due process rights.  D.E. 1 at ¶¶ 67-69.  The standard for granting a temporary restraining order is the same as that for a preliminary injunction.  Injunctions and restraining orders are governed by Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1.  Injunctive relief may only be granted when a party demonstrates that he has a reasonable probability of success on the merits, he will suffer immediate and irreparable harm if the injunction does not issue, the grant of preliminary relief will not result in greater harm to the nonmoving party, and the injunctive relief

3

is in the public interest.  *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012) (citing *Crissman v. Dower Down Entm't Inc.*, 239 F. 3d 357, 364 (3d Cir. 2001)).

Like injunctive relief in general, granting bail to a habeas petitioner is an extraordinary remedy.  *See Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992) (indicating that a court may only grant release pending a disposition of federal habeas claims when the petitioner has raised "substantial constitutional claims upon which he has a high probability of success, and ... when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective") (citation omitted); *see also In re Souels*, 688 F. App'x 134, 135-36 (3d Cir. 2017).

As noted, Petitioner is detained pursuant to 8 U.S.C. § 1226(a), which provides that a detained alien may be released on bond or conditional parole.  8 U.S.C. § 1226(a)(2).  Petitioner is not subject to mandatory detention under Section 1226(c).  Petitioner's initial bond determination can be reviewed by an IJ.  8 C.F.R. § 1003.19(a).  Critically, "[a]pplication for an initial bond redetermination by a respondent,[4] or his or her attorney or representative, may be made orally, in writing, or, at the discretion of the Immigration Judge, by telephone."  *Id.* at § 1003.19(b).

In short, Petitioner has a statutory basis by which to seek his release on bond without wading into the "extraordinary remedy" now sought.  The Court is sympathetic to Petitioner's desire to gather as much evidence as possible to ensure his release on bond.  Yet, Petitioner now represents that the critical information he needed was proof that his underlying criminal charge

---

4 "Respondent" as used in the regulation refers to Petitioner.

had been dismissed.  D.E. 21 at 2.  However, when Petitioner filed his matter with this Court on May 7, 2020, his verified habeas petition asserted that his criminal charge had been dismissed on May 4, 2020.  D.E. 1 at ¶ 51.  As a result, Petitioner had proof at least as early as May 7, 2020, that his criminal charge had been dismissed, and he thereafter had a telephonic master hearing on May 11, 2020.  Given the relative ease provided by the regulation in requesting a bond redetermination, Petitioner's delay in doing so is not justifiable.  Petitioner has not shown that his request for a bond redetermination would be futile.

Petitioner does not allege that he has exhausted his potential administrative remedies.  The Court also recognizes that the standard applied here – punishment in violation of the Fifth Amendment's Due Process Clause – is different than the statutory and regulatory framework that an IJ would apply in a bond redetermination.  Yet, an alien seeking his release, be it on bond or outright, will not be deemed to have satisfied the exhaustion requirement unless he makes use of any applicable administrative mechanism through which he can secure his release from custody even where his habeas claims are constitutional in nature and could not be directly raised through that administrative mechanism.  *See Okonkwo v. I.N.S.*, 69 F. App'x 57, 59-60 (3d Cir. 2003) (finding that an alien will not exhaust administrative remedy for claim that immigration detention is unconstitutional unless and until he makes use of administrative remedies, such as a bond hearing or parole request notwithstanding that the standard for bond or parole administratively may be different from the asserted constitutional claim); *see also Sheba v. Green*, No. 16-230, 2016 WL 3648000, at *3 (D.N.J. July 7, 2016).[5]

---

[5] In addition, to succeed on a Fifth Amendment due process claim, a petitioner must show that his conditions of confinement "amount to punishment of the detainee."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  In making this evaluation, a court must determine "whether a condition of confinement is reasonably related to a legitimate governmental objective[.]"  *E. D. v. Sharkey*,

**III.    Conclusion**

For the foregoing reasons, the Court denies Petitioner's Motion for a TRO, D.E. 14, without prejudice.   If Petitioner is denied release on bond by an IJ, or if an IJ cannot timely hear Petitioner's request for an initial bond redetermination, Petitioner can again move for a TRO on short notice.   An appropriate Order accompanies this Opinion.


Date: 5/20/2020

*(signature)*
JOHN MICHAEL VAZQUEZ
United States District Judge

---

928 F.3d 299, 307 (3d Cir. 2019) (citing *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008)). This means that a court must ascertain whether the confinement conditions serve a legitimate purpose and whether the conditions are rationally related to that legitimate purpose.   *Hubbard* 538 F.3d at 232.   The government has legitimate interest in requiring, if feasible, that an immigration detainee first seek administrative relief before alleging a constitutional violation.